Good morning, Your Honors. I'm William Dreyer and this is Robert Ritter. We're appearing for the Appellant Landlord Aldrich Nine Associates. I've requested a reservation of five minutes for rebuttal. Your Honors, this is an appeal from the dismissal under Rule 12b-6 of the second of two successive suits for back rent or rearages. I think the facts and the law in this case are relatively simple, but we contend misunderstood and misapplied by the District Judge when she dismissed our complaint based upon the entire controversy doctrine. We know what the State Court said about Aldrich bringing a second action. How is that essential to the ruling on damages? What is really essential is that when you look at the entire controversy doctrine, there are... Well, they really didn't actually, they talked about judicial estoppel. We'll come to that. Well, this is what our adversaries said, but the District Judge... Why is that essential to the ruling? Because... You don't understand where I'm coming from here, but why would that be essential? Because the first action was brought for the first two years' rent. There were nearly four years remaining, and if we weren't permitted to bring... Well, you really got a finding of liability for all the years. No, I think that was misread, Your Honor. The liability finding ran through 2006 because there had been a dispute as to the exercise of an option, or actually a novation, before Judge Mecca. And the summary... Remember, this was just a summary judgment determination on liability. There had been a dispute whether the lease was to end as of the time of the novation, or when the new tenant had defaulted, whether the original leasehold time that went through 2006 still remained. So Judge Mecca had to determine, was there a breach, and then for what period? We had claimed there was a breach of the lease, and the lease contained two clauses for what happened on default. Now, if the period ran through 2006, that was the period that was breached, then what happens? Well, the lease has two options. Under Section 21C1... So you chose option one. We chose option one. Now, in this one, why wouldn't it... Why wouldn't you choose something like option two? What would you get, the PV, present value? Yes. You get present value, less credit for fair market value. There had to be other proofs that just weren't put before the court. We weren't going under option two. It would make no sense. It's better for you to take the other option. Much better. So why didn't you wait until the lease was over and then sue them? Well, let's look at what that would mean. Take any landlord who had a long-term lease. Were you going to sit back and pay the mortgage, the taxes, the insurance, the maintenance on the property during the whole period with no income coming in? Only the very richest landlords in the country could do that. You have to be able to come in periodically and get some money. This was a million dollars we needed in the middle, and then there was another $2 million that's at stake here by waiting until the end. And, Your Honors, New Jersey law is clear on this, absolutely clear that the entire controversy doctrine doesn't block them in a situation like this. Why not? Well, there are two recognized exceptions out of many, but two of the recognized exceptions are, number one, when there's been an express reservation by an earlier court. And here we had Judge Miller saying the cases can be brought seriatim. That's his words, that you can do this. And there we have the cases such as Brown v. Brown and DiOrio, which are solid. We cite them in the briefs that say when that happens, there's no entire controversy doctrine. Now, I know Brown v. Brown. I sat on that case. And Judge Pressler, who wrote in her commentaries on the New Jersey rules, she wrote the opinion in Brown and also was on the part that decided DiOrio. And in her commentary, she said this is one exception. Now, the second exception goes for matters that had not yet arisen as of the first case. Now, at the time of the first case, the additional rentals had not yet been defaulted on. They could have decided they're going to pay the rents. The real estate market may have changed so that the mitigation questions were entirely different for the new period. Did your lease have an acceleration provision? Say again. I'm sorry. Didn't your lease have an acceleration provision? That was the second option we could have chosen, which we didn't. The time to choose the options was not when you got liability, but when you went to prove damages. You proved one or the other. We went solely on the back rent provision, and it's clear. We said it. Judge Miller said it clearly. Back rent is what he was giving for. Now, Your Honors, on the other part where the hadn't arisen yet, we have the cases such as Harley-Davidson, which is clear that when new factors come up. And, again, I'm somewhat familiar with that. I wrote Harley-Davidson. And it's been followed time after time. That was ten years after the Brown v. Brown one. It's just recognized. And if you look at the commentaries in Judge Presto's annotations to the New Jersey rules, you'll see she lists the exceptions to the entire controversy doctrine. And in those exceptions, she lists these as two separate exceptions with a whole listing of cases after them. These are recognized. We followed it. We followed the rules. And I think had the district judge allowed oral argument, which she didn't on this motion, this might have been explained to her. This wouldn't have happened. She got the paper. She decided the case. And she looked back at what the first judge, Judge Mecca, did in the summary judgment. It wasn't the real problem. You weren't ready to go ahead with an expert on the damages. On the summary judgment motion, of course not. That wasn't the time to proceed on that. All we were looking for is to show their breach and the fact that the lease did run through 2000 to 2006. It didn't stop earlier. That was decided. And then we came before Judge Miller for the initial period. Sure, we weren't prepared to show damages beyond the argument before Judge Miller. There'd be no reason to. We put in what we had to that date. They hadn't paid the rent. Our client, who was qualified as the expert, came in. He proved the mitigation efforts. Their expert was thrown out. We showed what we had to at that time. And more than that, Your Honors, it was appealed. Any issues that our adversary disagreed with in the case before Judge Miller were resolved in the appeal. He didn't raise this point, by the way, and he might have. He very well might have raised these points. But he's bound by what happened there. And Judge Miller used the word, these can be brought seriatim. Seriatim, one after another. And that's what we did. And when we went to bring the second case. So your argument essentially is the contract allows you to do it, choose various options, and the judge specifically said you could do it. That's essentially what it comes down to. That is it. And I'll save the rest for rebuttal if I can. Thank you. Thank you, sir. Mr. Castello. Good morning, Your Honors. If it may please the Court, Jeffrey Castello for Appellee, Foot Locker Specialty, Inc. Mr. Dreyer brings up two pretty good points, which is that this contract specifically allowed the election of remedies. And there were two options, and it chose one of the options. And it chose the option that said we're going to go for what we currently have in the past, hindsight. And they asked the Court in effect if they could come back later, and the Court said yes. So that's kind of tough to get around, isn't it? I don't believe so, Your Honor. What are they supposed to do? Well, I guess they could have pled their complaint differently. They could have. But after the judge told them, what are they supposed to do? If we're speaking about the trial judge's dictum in ruling on an evidentiary motion. If I was Mr. Dreyer, that would be a pretty good dictum. That nonetheless, Your Honor, I believe is an advisory opinion. It was not the issue that was before the trial court judge. But if you were in his position, what would you have done to seal the deal then? If I were. And if you were before the judge. I mean, and you have this option. Basically, what you're saying is no matter what the contract says, you really don't have the option that they have elected and that was approved by the state judge. I respectfully disagree, Your Honor. This case is about a choice. It's about a choice of plaintiff's own making. Nobody disputes that there were two options under this lease. Nobody disputes. And they don't have a choice to take one of those options? They made a choice, Your Honor. So, in other words, you're saying if they make the choice they make, they forfeit the other four years? The way that they pled their complaint and sought a judgment through the end of the lease, which they did not have to do. They could have reserved in that first action. They could have filed a complaint that said they were going to seek damages for past due rent up through the time of trial. I don't know why they pled up through the end of the lease. I don't know why they sought a judgment, perhaps prematurely, up through the end of the lease. Let me ask you this. Under the entire controversy doctrine, one of the prongs is whether it would be unfair to you to have to come back. Where's the unfairness to you to come back now and say I contest the remaining three to four years? How's that unfair to you? To try a case, Your Honor. The way that the two options work, the policy reason for these two options really is to encourage, in leases like this, a landlord to make its best efforts to mitigate its damages to go out and get that space rented up. And then it can accelerate and it still gets the benefit of its bargain. It has a new tenant and it makes up a shortfall. If it decides to go for back rent, as plaintiff did here at trial, they would have to come through with expert testimony about where are reasonable efforts. But how are you in a worse position? Assuming we apply the entire controversy doctrine, how are you in a worse position to have to come back now? It could have waited, Your Honor. They could have waited until the end of the lease and they still had over a year. How does that put you in a worse position? Does your evidence go away? Is there something? No, Your Honor. They would have had to come to trial with proofs of their efforts to mitigate. You're saying you have to face a second trial. I have to face a second trial. But the benefit of them waiting, Your Honor, would be someone sitting in a witness chair testifying these were our efforts to mitigate our damages. And they may have, in that intervening four or five year period, actually found a tenant to take up the large majority of the rent that was then due. So not only do I lose that opportunity at their choosing, not mine, but I also have to go back and try a case all over again. Same issues. Same judge. Same lease. Same claim. No, you don't have to go back and try all the issues. Liability has been determined. Fair enough, Your Honor. I didn't mean liability. I mean on damages. Well, on damages, you're talking about more or less a mathematical computation, aren't you? I disagree, Your Honor. If they waited, if they chose to wait until the expiration of the lease. No, no. You're evading my question. And I want to ask you this. The judgment that was entered by the New Jersey court said judgment was entered in favor of the plaintiff against Foot Locker for $1,150,000. And just before that, the court says, and for the reasons expressed on the record by the court on August 1, 2003, judgment is entered for Aldridge. Now, where in the record are those reasons put forth? I'm sorry, Your Honor. I didn't hear the end of your question. Where in the record are those reasons put forth? It said judgment is entered for the reasons. On August 1, it said judgment is entered for the reasons that were given on the record. I'm not sure what Judge Miller was referring to, but I made a motion for a directed verdict. I think what he's referring to is, if I'm not mistaken, he said that the New Jersey Superior Court noted that, quote, Aldridge elected to go with back rent and not the acceleration clause. And the court said that that was acceptable. So that was the reason given for the judgment entered the next day. I would think that counsel would make sure that the pertinent part of the judgment would be entered in the record and made available to us. I'm not sure, Your Honor. Okay. court saying they've elected this option, I've allowed them to elect this option, and they can come back. And back to the point that I said to you, geez, when somebody says that to me, I don't know. What's Mr. Carrash supposed to say? You know what? I don't think so. I think the entire controversy doctrine just may just shoot us out here, despite what you just said to me. And I've just got to go for it all. I've got to forget that option that I've negotiated with you, and I've got to go for the other option where we go for everything through 2006. How do we get around that? I think the way to get around that would have been account for declaratory judgment to determine exactly what the effect of that lease is, what that full liability was, and what plaintiff had to do to ensure that it could come back. If it chose the first option, what plaintiff could do, appellant could do. Well, I mean, one could argue that essentially you have a declaratory judgment with respect to liability. Well, just with respect to liability, Your Honor, out to 2006. That directly implicates the entire controversy doctrine. That I don't believe appellant can overcome. They did not have to plead that complaint that way and also seek a judgment through the end of the lease. They had options. They could have waited until the lease expired. We wouldn't be here today. Mr. Carrash's point is I've got to have a belt and suspenders. I have the contract and the court telling me that I can enforce the contract as I chose to enforce the contract with respect to damages. What else can he do? Well, Your Honor, I disagree that what Judge Miller did, what the trial judge did in ruling on that eliminate motion, has the effect that appellant claims that it has. It was an advisory opinion. It was dicta. That was not the issue before the court. The issue before the court was whether they were going to be precluded from proffering any evidence at trial about back-due rents, since what they had sought all the way through, certainly what it appeared to us was the second option, the acceleration. So should he have said, okay, when the court told him that, I want you to put that in the judgment? I mean, in effect, the court did, by implication, by saying, for the reasons I noted on the record. But you're saying that he should have noted that in the judgment itself, that they have elected one option, and this allows them on damages to come back for the following X number of times through 2006? I don't believe they could have, based on the eliminate rule, Your Honor. That's not what was before the court for the judgment. The eliminate ruling was an evidentiary ruling about what plaintiff could use at trial. It wasn't about what the ultimate judgment in this case was going to be. They already received a liability finding that judgment was extended through 2006. Then they had to come back and prove damages, if it was for back rent, through 2006 so that we wouldn't end up here today. Just to clear up one factual issue. Wasn't this, at least at one point, extended through 2011? Well, that gets us into the innovation issue, Your Honor, and that's what we argued, that the consideration for that extension created innovation. We didn't get a chance to argue that after the motion for summary judgment. At the state court level? Yes, Your Honor. Okay. So basically, you're telling us we're to ignore what a state court judge said because of the entire controversy document. No, Your Honor. What I am respectively saying is that this court cannot rely on, just like Judge Hayden did not below, rely on a ruling in an evidentiary motion. Now, that didn't implicate the issue that was a part of our motion to dismiss the entire controversy doctrine in res judicata. That was the issue that we brought before the trial judge in the federal case. That was not an issue that was before the trial judge when he ruled on the eliminate motion at trial. So you're saying it wasn't essential to his rule? It was not, Your Honor. Judge White, do you have any further questions? No further questions. Thank you very much. Mr. Dryer. Your Honors, I'll just take a minute. I think the first question I asked you and what we just had restated again by Mr. Costello here was that statement is gratuitous about bringing a second action. It's not essential to the judge's ruling. What do you say to that? Well, it was as vital as it could be to us as to whether we could bring it, especially as against what later happened, which was the entire controversy claim where that statement pulls it out of entire controversy. But we were there in court to prove the damages to the time of the hearing. If on the evidential, the eliminating motion prior to the hearing, just prior to the hearing, we had been told, oh, no, you have to prove everything today, we would probably have asked for an immediate adjournment, because although we had our client as an expert, we may have needed experts as to the future rental prospects for the property. Entirely different proofs would have gone in. It's just not the same. And, Your Honor, if you look at the complaint, which my adversary has noted, we put in there that we had paid, demanded payment of all accrued charges. They had refused to pay the amounts under the lease, and we asked for all sums due under the lease. Under the lease. The lease had the two options in it. There were two clauses. We hadn't gotten to the way we were going to prove it yet. That came later in the damages hearing, where we proceeded under option one rather than option two. And, Your Honors, the Brown and the DiOrio cases are just so clear that when you have been granted the right to do something, and then you proceed in that way, that the entire controversy doctrine does not apply. And, Your Honors, I don't know whether you have a copy of the annotated New Jersey rules in your libraries. You have the Pressler commentary, because if you didn't, the new one's coming out this week, I understand, and this is the 08 version. I'd be happy to give you a copy if you wanted it. I think we're fine. As long as you have it. I have nothing else, Your Honors, unless any of the three of you have an additional question. No further questions. Right. Thank you very much. Thank you to both counsel for a well-presented oral argument, I should say. Thank you. And we'll take the matter under advisement. I'll call the next case, which is...